HARRY B. HOLLINS and Others, Plaintiffs, *v.* SAMUEL T. HUBBARD, JR., and Others, Defendants.

91h 375
s165a544

*Sale of merchandise — consignor's draft against the merchandise in the hands of the consignee — ignorance of the consignee, giving an agreement of delivery to the drawee, that the draft was drawn — knowledge is essential to a consideration — form of a delivery order — estoppel — a representation must be of an existing fact — a promise is not a representation.*

In an action brought to recover damages for a breach of a contract to deliver certain bales of cotton, it appeared that on June 27, 1891, the defendants had in their possession upwards of 300 bales of cotton consigned to them by Charles Green's Son & Co., of Savannah, upon which they had a lien for advances made to the consignors; that on that date a draft, drawn by the consignors against 200 bales of cotton, was presented to the plaintiffs; that on the same day the consignors wrote to the plaintiffs advising them of a draft for $10,000 against 200 bales of cotton, of which 50 bales were sent therewith together with a bill of lading and a certificate of insurance for 150 bales, which the latter stated were to be delivered by the defendants in pursuance of an order inclosed; that this order, addressed to the defendants, directed them to take out a bill of lading, by steamer for Liverpool, for 150 bales of cotton and delivered it to the plaintiffs, such bill of lading to be taken out in the name of the consignors to the order of some clerk, and to be indorsed in blank and with an insurance certificate for the cotton to be delivered to the plaintiffs. It was proved upon the trial of the action that this order was not in the form usual among merchants.

It further appeared that the plaintiffs sent the order to the defendants, telling them nothing of the purport of the letter by which the consignors advised the plaintiffs that they had drawn against the cotton, and that the defendants, on

receipt of the order, wrote to the plaintiffs that the cotton could not be shipped for Liverpool until the next week, and that at that time they would deliver the bill of lading for 150 bales of cotton, and also the insurance certificate; that the plaintiffs upon receiving this letter paid the draft and immediately afterwards the consignors failed; that the defendants thereupon refused to deliver the cotton unless repaid the advances which they had made upon it to Charles Green's Son & Co.

The plaintiffs brought this action for the breach of the agreement to deliver.

*Held*, that there was no consideration for the defendants' promise to deliver the bill of lading for the cotton;

That as they did not know when they promised the cotton for future delivery that the plaintiffs intended to pay the draft of Charles Green's Son & Co., in reliance upon that promise, such an intention upon the part of the plaintiffs could not be read into the agreement with a view to furnishing a consideration for it, and that the plaintiffs had not estopped themselves from a refusal to deliver the cotton;

That the delivery order executed by Charles Green's Son & Co. was not drawn in the form which was usual among merchants, and that the reply of the defendants to the plaintiffs upon the receipt of the order was not a representation that the defendants had made any appropriation of 150 bales of cotton or that it had been placed under the control of the plaintiffs;

That, in order to create an estoppel, there must be a representation as to some existing facts and not merely a promise as to some future act;

That the letter of the defendants to the plaintiffs was a mere statement that they would at some future time furnish to the plaintiffs evidence that an appropriation of the cotton had been made and that it had been placed under the control of the plaintiffs.

MOTION by the defendants, Samuel T. Hubbard, Jr., and others, for a new trial upon a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit on the 5th day of June, 1895.

*William D. Guthrie* and *Randolph Hurry*, for the motion.

*Julien T. Davies*, *Charles Francis Stone* and *Herbert Barry*, opposed.

VAN BRUNT, P. J.:

On the 27th of June, 1891, the defendants, commission merchants in the city of New York, had in their possession upwards of 300 bales of cotton, which had been consigned to them by Charles

Green's Son & Co., of Savannah, Georgia, and which were held by them subject to a lien for advances made to Charles Green's Son & Co. The plaintiffs were at the time engaged in business as bankers in the city of New York. On the day above mentioned there was presented to the plaintiffs a bill of exchange for $10,000 drawn by Charles Green's Son & Co. against 200 bales of cotton. The plaintiffs on the same day received from Charles Green's Son & Co. a letter dated June 25, 1891, advising the draft as follows:

"SAVANNAH, 25 *June*, 1891.

"Messrs. H. B. HOLLINS & Co., New York:

"DEAR SIRS.— We beg to advise our draft on you, favor the National Bank of Savannah, $10,000, against 200 B | c for Liverpool as per documents enclose, viz.: 50 B | c herewith and B | L & certificate of insurance for 150 B | C to be delivered to you by Messrs. Hubbard, Price & Co. as per order herewith.

"(Signed)                Yours truly,
                "CHARLES GREEN'S SON & CO."

The accompanying order was as follows:

"SAVANNAH, 25*th June*, 1891.

"Messrs. HUBBARD, PRICE & Co., New York:

"DEAR SIRS.— Confirming our telegram of to-day you will kindly take out B | L by steam to Liverpool for S A M 25, J A L 25, A M O 25, T O M 25, H O X 25, H O N 25 — 150 B Cotton and deliver same to Messrs. H. B. Hollins & Co., N. Y. Please have the B | L taken out in our name to order of some clerk and indorsed in blank. Also, please get insurance certificate from United States Lloyds (50 Wall street), and deliver same to Messrs. Hollins. The remaining cotton you have of ours we shall keep in N. Y.

"(Signed)                Yours truly,
                "CHARLES GREEN'S SON & CO."

Upon receipt of these papers the plaintiffs sent the order to the defendants by a messenger boy, but did not send or disclose the purport of the letter above referred to. They subsequently received from the defendants an acknowledgment as follows:

First Department, December Term, 1895.          [Vol. 91.

"Cotton Exchange Building,
"New York, *June* 27, 1891.

"Messrs. H. B. Hollins & Co.,
.            "Present:

"D. Sirs.— 150 B | C referred to for account of Messrs. Charles Green's Son & Co. cannot be shipped till next week, when we will deliver to you B | L and certf. of ins. as requested.

"Yours truly,
"(Signed)                         HUBBARD, PRICE & CO.
"D. A. W."

Upon the receipt of this letter from the defendants, the plaintiffs paid the draft for $10,000, and immediately thereafter Charles Green's Son & Co. failed. At the time of the writing of the letter above mentioned from the defendants to the plaintiffs the defendants had no knowledge or information that the plaintiffs intended paying any draft of Charles Green's Son & Co. upon them.

It appears from the evidence that the letter from Charles Green's Son & Co. to the defendants is not the usual form of delivery order in use among merchants. The defendants having refused to deliver the 150 bales of cotton without being reimbursed for the advances made by them to Charles Green's Son & Co. thereon, the plaintiffs commenced this action for damages for a breach of the contract to deliver the same. Upon the trial of the action these facts being established, the court directed a verdict for the plaintiffs, and ordered the exceptions to be heard in the first instance at the General Term.

The plaintiffs claim to recover in this action upon three grounds : *First,* that there was established an agreement upon the part of the defendants to deliver, founded upon a valuable consideration ; *second,* that even if the defendants had a lien upon the cotton it was waived ; and, *third,* because the defendants are estopped from questioning the plaintiffs' right to the cotton in question.

It is difficult to understand how a consideration can be imported into a contract without the knowledge of the contracting party who is to be bound because of the existence of such consideration. It seems to be essential to the existence of a valid contract that each party should be cognizant of all its terms and features ; and that where one party is ignorant of that which is a necessary constituent

of the alleged contract, there is no basis upon which an agreement can be founded, because a party cannot agree in respect to a thing of which he is absolutely ignorant.

It would seem, therefore, that the defendants being ignorant of the fact that the plaintiffs intended to make advances upon the strength of the defendants' promise to ship the cotton in question, such intention upon the part of the plaintiffs cannot be read into the agreement between the parties to this action in order to furnish a consideration.

As to the second ground, namely, the waiver of lien, it seems sufficient to say that if the defendants had contracted to deliver, or had estopped themselves from setting up their lien, the existence of such lien would be no defense.

The only other question which it is necessary to consider is : Were the defendants estopped from questioning the plaintiffs' right to the cotton in question ? If they had known of the action that the plaintiffs were about to take upon the strength of their communication, there can be no doubt but that they could not be heard now to question the right of the plaintiffs to claim damages for the non-fulfillment of the promise contained in the letter.

But it is urged upon the part of the plaintiffs that the ignorance of the defendants is no justification; that the promise to deliver was absolute, and that the plaintiffs had a right to act thereon. In support of this proposition the plaintiffs cite the cases of *Woodley* v. *Coventry* (2 Hurls. & C. [Exch.] 164), and *Knights* v. *Wiffen* (L. R. [5 Q. B.] 660).

The case of *Woodley* v. *Coventry* was as follows :

The defendant was a dealer in corn and flour, and sold to one Clarke certain barrels of flour, but payment was not made for the same. Clarke then applied to the plaintiffs for a loan upon the security of the flour, and gave them the following order :

> "JACK'S COFFEE HOUSE, MARK LANE,
> "*August* 25, 1862.

"MR. M. COVENTRY :

"Deliver to Messrs. Woodley and Meadows

130 barrels Flour, Columbia Mills.

218 ditto Diamond ditto

"JOSEPH CLARKE."

The plaintiffs, before making the loan, sent the order to the defendants' warehouse by a clerk, who made a full inquiry there whether it was all in order, and received an oral answer, "Yes," and he thereupon left the order at the warehouse, where it was accepted. The plaintiffs then made the loan to Clarke, which had been requested by the latter. Thereafter Clarke became insolvent and the defendants refused to deliver the flour, upon the ground that plaintiffs stood in no better position than Clarke, and must first pay the purchase moneys owing by the latter. The court held that the defendants' position was untenable, and that the plaintiffs were entitled to recover.

POLLOCK, C. B., in his opinion, says: "The real question was whether the defendants had so conducted themselves that the plaintiffs had a right to say: 'We call upon you to deliver to us the flour which you say you held on our behalf.' The question whether the property passed, as between vendor and vendee, never arose. The only question was whether the defendants had acknowledged that they held the flour on behalf of the plaintiffs, for, if so, according to law and justice, they were bound to deliver it or pay the damages."

The case of *Knights* v. *Wiffen* (*supra*) was as follows: The defendant Wiffen was a produce merchant, and had a large quantity of barley in sacks in his granary adjoining Stanstead Station on the Great Eastern railway. He sold eighty quarters of this barley to one Maris, without specifying any particular portion. Maris did not pay for the barley, however. While the barley remained in the defendant's granary Maris sold to the plaintiff sixty of the eighty quarters purchased by him, and the plaintiff paid Maris for the same, receiving from him the following delivery order:

" STATION MASTER,

   " Stanstead :

   " SIR.— Deliver Mr. T. Knights 60 quarters of barley to my order.                                R. W. MARIS, JUN.

   " *June* 27, 1868."

This order was sent by the plaintiff to the station master, who showed it to the defendant, and the latter said: " All right. When you get the forwarding note I will put the barley on the line." Subsequently Maris became insolvent, and the defendant refused to

deliver the barley, on the ground that he had a lien thereon as unpaid vendor.

The court held that the plaintiff was entitled to judgment, and MELLOR, J., in his opinion, said: "Lord ELLENBOROUGH says in *Stonard* v. *Dunkin* (2 Campbell, 344): 'Whatever the rule may be between buyer and seller, it is clear the defendants cannot say to the plaintiff, 'the malt is not yours,' after acknowledging to hold it to his account. By so doing they attorned to him, and I should entirely overset the security of mercantile dealings were I now to suffer them to contest the title.'"

LUSH, J., concurring in the decision, said: "The defendant, by what he said to the station master, assented to the transfer and induced the plaintiff to believe that he would hold the barley to his order. By so doing he altered the position of the plaintiff towards Maris. The plaintiff might, on a refusal by the defendant to hold for him, have applied to Maris, and he was deprived of the information which would have caused him to have done so. The defendant is, therefore, precluded from denying what he said."

It will be seen that in each of these cases a delivery order was given and accepted, and that the defendant by his acceptance acknowledged that he had the goods in question and that an appropriation had been made of the proper amount and placed in the possession or under the control of the purchaser; and this was a statement of existing facts upon which the plaintiff relied and acted.

The case at bar is entirely barren of these features. The letter from Charles Green's Son & Co. to the defendants was not a delivery order in the usual form in use among merchants, and the reply of the defendants to the plaintiffs upon the receipt of that order was not a representation that any appropriation had been made of the proper amount and placed under the control of the plaintiffs; but it was a mere statement that they would at some future time give the plaintiffs the evidence that such an appropriation had been made and that the property so appropriated had been placed under the control of the plaintiffs.

An examination of the case of *Anderson* v. *Read* (106 N. Y. 333) shows that it is necessary that this element should exist in order that an estoppel should arise. The distinction between that case and the case of *Knights* v. *Wiffen* (*supra*) has been pointed

out, and it consists in the fact that in *Knights* v. *Wiffen*, by the acceptance of the delivery order, acknowledgment of possession and appropriation and change of ownership were represented.

In the case of *Anderson* v. *Read* the facts seem to be substantially as follows : The defendants' firm had entered into a written contract with the firm of Rasin & Co. for the purchase and sale of 1,000 tons of ammoniated superphosphates. The contract signed by the defendants recited, among other things : " We have to-day sold to Messrs. R. W. L. Rasin & Co., of Baltimore, Maryland, 1,000 tons," etc. Rasin & Co. had previously contracted to sell to one De Leon a larger amount of the same general kind of fertilizer, and he (De Leon) agreed to accept the goods purchased of defendants to apply upon his contract. The defendants, with knowledge that Rasin & Co. had made such a contract with De Leon and desired the goods to make delivery under that contract, accepted an order drawn on and presented to them by Rasin & Co. requiring them to deliver the goods to De Leon, and agreed to so deliver them. De Leon paid Rasin & Co. for the 1,000 tons partly in his own notes, which were not paid, and partly by acceptances of third parties, which were paid. Rasin & Co. gave their notes to the defendants for the purchase price of the phosphates, and soon after stopped payment, and failed without paying the notes. The defendants refused to deliver the goods to De Leon unless they were paid the purchase price of the phosphates, offering to surrender the notes received by them. The action was brought by De Leon's assignee to recover damages for this refusal. The Court of Appeals sustained the right of the defendants to refuse delivery, on the ground that the acceptance of the order of Rasin & Co. in favor of De Leon did not vest any right of property in him, but simply amounted to an assignment to him of the rights of Rasin & Co. under the contract, and that as they had the right to refuse to deliver to Rasin & Co. unless paid for their goods, after that firm became insolvent, they had the same right as against De Leon, and were not estopped from asserting their vendor's lien.

The following language in the opinion of the court in that case seems to be applicable to the case at bar : " If the latter (De Leon) desired accurate information from the vendors in order to bind them as to the meaning in this instance of language which is sus-

ceptible of different meanings, he should have asked them, and if the defendants then made any false representations, or were guilty of acts which were equivalent thereto, they might thereafter be estopped from showing, the truth as against one who, on the faith of such representations or acts, had altered his position to his detriment if the truth should be proved. Here is no such case. When the order is produced by Rasin and accepted by defendants, the implication which accompanies it on these facts is that defendants will deliver it to De Leon under the same circumstances which they would deliver to Rasin & Co., and if circumstances should arise prior to the delivery which would absolve the defendants from their obligation to deliver to Rasin & Co. by reason of their insolvency, the same right would remain with defendants when a delivery should be demanded by De Leon.   *   *   *

"This case is quite as strong for the defendant as that of *Farmeloe* v. *Bain* (1 C. P. Div. 445). In that case defendants sold 100 tons of zinc to B. & Co., and gave them an order, in which defendants undertook to deliver to their order, indorsed thereon, 25 tons, etc., ' *off your contract of this date,*' and signed it. Upon the faith of this document the plaintiffs bought of B. & Co., and paid for, 50 tons of zinc, and B. & Co. having failed without having paid the defendants, they refused to deliver the zinc to the plaintiffs. The jury found that the defendants, in signing the order, intended the same as a representation to all persons to whom it should be shown that the goods therein mentioned were the property of B. & Co. The court, however, held that this document, thus signed by defendants, was not a known document among merchants, and was to be looked at as any other instrument in writing, and as thus looked at it contained no representation of any fact, and the plaintiffs had no right to rely upon it as such a representation, and, consequently, could not claim an estoppel.

"In the documents before the court in this case there are no representations of any fact which the defendants now seek to deny. They simply claim the right to refuse to deliver to an insolvent vendee or his assignee, goods which they had contracted to sell and deliver to one whom they supposed solvent when the contract was made. They deny no fact stated in their writings, and they take no new or different position, and claim no other or further right than they have at all times had."

Applying the principles enunciated in this case and the cases therein cited, it would seem that in order to create an estoppel, there must be a representation of an existing fact, and not a promise in respect to some future act. It follows, therefore, that there being no contract and no estoppel, no right to recover exists in the plaintiffs.

The exceptions should be sustained and a new trial granted, with costs of this motion to the defendants to abide the event.

PARKER and PATTERSON, JJ., concurred.

Exceptions sustained and new trial granted, with costs of this motion to the defendants to abide event.