HARRY B. HOLLINS et al., Doing Business as H. B. HOLLINS & Co., Appellants, v. SAMUEL T. HUBBARD, JR., et al., Doing Business as HUBBARD, PRICE & Co., Respondents.

1. CONTRACT — CONSIDERATION — PROMISE TO DELIVER BILLS OF LADING. A promise made by commission merchants, after written direction from the owner, to deliver "next week" bills of lading for cotton in their possession to bankers upon whom he had made a sight draft, which was immediately honored in reliance upon such promise, is without consideration and does not constitute a valid contract where the commission merchants were not informed of the draft and of the bankers' intention to pay it before receiving the bills of lading.

2. CONVERSION — REFUSAL TO DELIVER BILLS OF LADING. Where the written directions of the owner to both parties did not contemplate that the draft should be honored until the delivery of the bills of lading, the payment of the draft by such bankers does not constitute them his assignees of the cotton with the merchants' consent so as to charge the latter with its conversion where, upon his insolvency before the time for delivery, they applied it upon their lien thereon for sums advanced.

3. ESTOPPEL — FAILURE TO ASSERT LIEN. Neither the promise of such merchants nor their failure to notify the bankers of the lien will estop the former from asserting the lien or denying the bankers' ownership of the cotton upon the insolvency of the owner, where the merchants had no intimation that the bankers intended to pay the draft upon the promise instead of upon the security of the bills of lading when received.

*Hollins* v. *Hubbard*, 38 App. Div. 629, affirmed.

(Argued December 20, 1900; decided February 5, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered March 21, 1899, affirming a judgment in favor of defendants entered upon a verdict directed by the court.

The complaint seeks to recover damages sustained by the plaintiffs because of the breach by the defendants of their alleged contract to deliver to the plaintiffs the bills of lading of one hundred and fifty bales of cotton.

On and prior to June 27, 1891, the plaintiffs were copartners under the firm name of Hollins & Company, doing business in the city of New York as bankers, and the defendants were copartners under the firm name of Hubbard, Price & Company, doing business in said city as commission merchants, warehousemen and dealers in cotton. At the same time Edward E. Green was doing business as a cotton buyer, forwarder and shipper at Savannah, Georgia, under the name of Charles Green's Son & Company. Prior to June 27, 1891, Green had consigned to the defendants one hundred and fifty bales of cotton, of the value of $5,896.25. Green was indebted to the defendants on account of advances by them to him upon this consignment in the sum of about $8,000. He was also indebted to the plaintiffs upon account of their acceptances of his drafts upon them.

On June 25, 1891, Green drew the following draft upon the plaintiffs :

" $10,000.                    SAVANNAH, Ga., 25 *June*, 1891.

" Pay to the order of the National Bank of Savannah ten thousand dollars, value received, and charge to the account of
      " CHARLES GREEN'S SON AND COMPANY.
" To Messrs. H. B. HOLLINS & COMPANY,
                          " New York."

This he delivered to the National Bank of Savannah, which indorsed it to the American Exchange National Bank of New York for collection, and forwarded it to the latter bank. The latter bank presented it for payment to the plaintiffs on Saturday forenoon, July 27, 1891. The plaintiffs did not then pay it, but told the messenger of the bank to call later in the day.

The same forenoon the plaintiffs received from Green the following letter :

"SAVANNAH, 25 *June*, 1891.

"Messrs. H. B. HOLLINS & Co., New York:

"DEAR SIRS.— We beg to advise our draft on you favor the National Bank of Savannah, $10,000, against 200 B/C for Liverpool as per documents enclosed, viz.: 50 B/C herewith and B L & certificate of insurance for 150 B/C to be delivered to you by Messrs. Hubbard, Price & Co., as per order herewith.      Yours, truly.

"CHARLES GREEN'S SON & CO."

Inclosed in this letter was a bill of lading for the 50 bales of cotton therein mentioned, and also the following letter addressed to the defendants:

"SAVANNAH, *25th June*, 1891.

"Messrs. HUBBARD, PRICE & Co., New York:

"DEAR SIRS.— Confirming our telegram of to-day you will kindly take out B/L by steam to Liverpool

| for | | |
|---|---|---|
| SAM | 25 | |
| JAL | 25 | |
| AMO | 25 | 150 B/Cotton. |
| TOM | 25 | |
| HOX | 25 | |
| HON | 25 | |

and deliver same to Messrs. H. B. Hollins & Co., N. Y. Please have the B/L taken out in our name to order of some clerk & endorsed in blank. Also please get Insurance Certificate from United States Lloyds (50 Wall Street) and deliver same to Messrs. Hollins.

"The remaining cotton you have of ours we shall keep in N. Y.      Yours, truly,

"CHARLES GREEN'S SON & CO."

Also a bill of exchange of same date, drawn by Charles Green's Son & Co. for £2,000 sterling at sixty days after sight on the Bank of Liverpool, Limited, Liverpool, England; it recited, "Drawn against 150 B/C (bales of cotton) from N. Y. to Liverpool as advised, and 50 B/C S. S. Tallahassee

to Liverpool via N. Y." And also of same date an open letter " To whom it may concern," stating the sale of the latter bill of exchange drawn against the shipment of the 200 bales of cotton, and directing the application of the bills of lading and cotton, if the bills should not be accepted, or if default be made in its payment. There was also inclosed a certificate of insurance of the 50 bales of cotton.

The plaintiffs before paying the draft sent to the defendants, by a messenger, the letter addressed by Green to them. The defendants retained the letter, and wrote the plaintiffs as follows :

" COTTON EXCHANGE BUILDING, ⎫
NEW YORK, *June* 27, 1891. ⎭

" Messrs. H. B. HOLLINS & Co.

" Present :

" D. SIRS. — 150 B/C referred to for acct of Mess Charles Green's Son & Co. cannot be shipped till next week when we will deliver to you B/L and certif. of ins. as requested.

" Yours truly,

"HUBBARD, PRICE & CO.,

" D. A. W."

Upon the receipt of this letter the plaintiffs, the same forenoon, paid to the American National Exchange Bank the draft for $10,000, drawn on them by Green. Green failed the following Monday. The defendants refused to deliver to plaintiffs the bills of lading for the 150 bales of cotton, and hence they could not sell Green's bill of foreign exchange, and thus by defendants' refusal lost the amount of the value of the 150 bales of cotton. This they seek to recover in this action, and from the judgment of the Appellate Division affirming the judgment entered upon the verdict directed for the defendants by the trial court, they bring this appeal.

*Julien T. Davies, Charles Francis Stone* and *Herbert Barry* for appellants. The defendants' promise was based

upon an adequate consideration and they are liable upon it.
(*Rector, etc.,* v. *Teed,* 120 N. Y. 583; *Oakley* v. *Boorman,*
21 Wend. 588; *Darrow* v. *Walker,* 16 J. & S. 6; *Earl* v.
*Peck,* 64 N. Y. 596; *Worth* v. *Case,* 42 N. Y. 362; *Seward*
v. *Jackson,* 8 Cow. 406; *Dunham* v. *S. C. S. Co.,* 33 Can.
L. J. 444; Story on Agency [9th ed.], § 140d; *M. C. & I.*
*Co.* v. *The Ottumwa Belle,* 78 Fed. Rep. 643; *Garretson* v.
*N. A. Bank,* 39 Fed. Rep. 163; *Knights* v. *Wiffen,* L. R.
[5 Q. B.] 660.) The plaintiffs established a *prima facie*
cause of action for conversion of the specific bales of cotton
in question. (Benjamin on Sales, § 1; Pars. on Cont. 435;
Schouler on Bail. & Carr. [2d ed.] § 220; *Barse* v.
*Morton,* 43 Hun, 479; *De Forest* v. *Bates,* 1 Edw. Ch.
394; *Kilpatrick* v. *Dean,* 3 N. Y. Supp. 60; *Ander-*
*son* v. *Read,* 106 N. Y. 333; *Barber* v. *Lyon,* 22 Barb. 622;
*Brill* v. *Tuttle,* 81 N. Y. 454; *T. G. C. Co.* v. *Smith,* 110
N. Y. 83; *Lauer* v. *Dunn,* 115 N. Y. 405; *Morton* v. *Nay-*
*lor,* 1 Hill, 583; *Riker* v. *Curtis,* 39 N. Y. Supp. 340.)
Hubbard, Price & Co. waived any right to assert a lien against
the 150 bales of cotton. (*Holbrook* v. *Wight,* 24 Wend. 169;
*Winter* v. *Coit,* 7 N. Y. 288; *Rogers* v. *Weir,* 34 N. Y. 463;
*Henry* v. *Brown,* 19 Johns. 49; *Stebbins* v. *Bruce,* 80 Va.
389; *Hall* v. *Fisher,* 9 Barb. 31; *Zabriskie* v. *C., C. & C.*
*R. R. Co.,* 23 How. [U. S.] 381; *Omaha Br. Cases,* 10 U. S.
App. 98; *Butler* v. *Cockrill,* 36 U. S. App. 702; *I. T. & S.*
*Bank* v. *Arkansas City,* 40 U. S. App. 257.)

*William D. Guthrie* and *Randolph Hurry* for respond-
ents. No contract was shown. (*Philpot* v. *Gruninger,* 14
Wall. 570; *F. Ins. Assn.* v. *Wickham,* 141 U. S. 564; *Com-*
*pania Bilbaina* v. *S. A., etc., Co.,* 146 U. S. 483; *Ellis* v.
*Clark,* 110 Mass. 389; *Pratt* v. *Hedden,* 121 Mass. 116;
*Rogers* v. *U. S. Co.,* 130 Mass. 581; *Robertson* v. *Rowell,*
158 Mass. 94; *Kirkpatrick* v. *Muirhead,* 16 Penn. St. 117;
*Sterne* v. *Bank of Vincennes,* 79 Ind. 549; *Fenouille* v.
*Hamilton,* 35 Ala. 319.) Green's letter of June twenty-fifth
was not a delivery order, nor was the defendants' letter of

June twenty-seventh a warehouse receipt. (*Anderson* v. *Read,* 106 N. Y. 333; *Fowler* v. *B. S. Bank,* 113 N. Y. 450; *Terry* v. *Munger,* 121 N. Y. 161; *Droege* v. *A. & O. Mfg. Co.,* 163 N. Y. 466.) No estoppel was established. (*White* v. *Ashton,* 51 N. Y. 280; *Pratt* v. *Ano,* 7 App. Div. 494; *Collier* v. *Miller,* 137 N. Y. 332; *Muller* v. *Pondir,* 55 N. Y. 325; *Thompson* v. *Simpson,* 128 N. Y. 270; *Lawrence* v. *A. Nat. Bank,* 54 N. Y. 432; *Anderson* v. *Read,* 106 N. Y. 333; *Knight* v. *Wiffen,* L. R. [5 Q. B. Div.] 660; *Simm* v. *A. A. T. Co.,* L. R. [5 Q. B. Div.] 188; *Farmeloi* v. *Bain,* L. R. [1 C. P. Div.] 445.)

LANDON, J. Green asked the plaintiffs to honor his sight draft upon them "against 200 bales of cotton for Liverpool, as per documents enclosed," among which was Green's letter of instructions to the defendants, the factors of Green, who were in possession of his 150 bales of cotton, having a lien thereon for their advances to him, and their compliance with his instructions was necessary to give the plaintiffs the security upon the 150 bales. Upon plaintiffs' presentation to defendants of Green's letter of instructions, the defendants did not comply with them, but promised in writing to do so the next week, and were silent as to their lien. Before the time expired which the defendants reserved for compliance, Green became insolvent, and the defendants refused compliance, and applied the cotton upon their lien. The plaintiffs, upon receiving the defendants' written promise, paid Green's draft, and having failed to obtain the cotton or the bills of lading for it, lost the amount of its value. The plaintiffs bring their action against the defendants to recover this loss.

They insist : (1) That the defendants made a contract with them to deliver to them the bills of lading, and are liable for its breach; (2) that by their acceptance of Green's proposal and payment of his draft they became his assignees of the cotton with the defendants' consent, and upon their waiver of their lien, and, therefore, the defendants are guilty of a conversion; (3) that the defendants are estopped by their retention of

Green's letter of instructions and their response to it, upon which the plaintiffs paid Green's draft, to assert that they had any lien upon the cotton.

1. We do not think the defendants made a valid contract to deliver to the plaintiffs the bills of lading. They concede that if the plaintiffs had in any way informed them of the draft which accompanied the letter sent to them through plaintiffs by Green, and of their purpose to pay it against the security of the one hundred and fifty bales of cotton, the detriment thus to result to the plaintiffs from the defendants' promise to deliver the bills of lading, without mentioning their lien, would have been a sufficient consideration to support their promise to deliver; but the defendants contend, and we think properly, that since no such information was given them, they knew neither the existence nor the nature or extent of any consideration, and, therefore, could not and did not make the promise to deliver because of it, and hence their promise to deliver the next week was a *nudum pactum*.

2. The complaint does not charge conversion; but if we should overlook that objection, it could only be wrought out through estoppel, which we shall hereafter consider. Apart from the estoppel, it is plain from Green's letter of advice to the plaintiffs and letter of instructions to the defendants, that Green did not ask the plaintiffs to make payment of his draft except upon defendants' delivery to them of the bills of lading. The minds of the parties, therefore, never met upon a transfer of title earlier, and although Green, having accepted the advance, may be held to have accepted the modification the plaintiffs intended, the defendants having done nothing to change Green's proposal in that respect, never assented to a transfer of title from themselves, except upon their delivery of the bills of lading, and hence they never converted the plaintiffs' cotton, but simply prevented their acquiring any.

3. The plaintiffs insist that the defendants' response, read in connection with Green's letter of instructions, is a representation by the defendants that the cotton was Green's; that the defendants held it without lien or charge, subject to

Green's instructions as contained in his letter; that they
accepted and retained his order, and that they would do as
Green requested, except that they could not ship the cotton
until the next week, when they would deliver the bills of
lading and certificate of insurance to the plaintiffs, as requested ;
and that thus they represented to the plaintiffs in effect, " We
accept Green's order, and now hold the cotton for you, treat-
ing Green's instructions henceforth as yours," and so construed
that the plaintiffs were justified in paying Green's draft upon
them upon the security of the cotton in question, and having
done so, the defendants are estopped from asserting any lien
upon the cotton, or from denying plaintiffs' ownership of it.
This is obviously importing into the defendants' letter much
more than it contains.   It may be assumed that it admits that
the cotton is Green's; that the defendants have it in their
custody or under their control; that they recognize Green's
instructions and are willing to obey them, and promise to do
so the next week.   Thus they admit Green's title and right of
disposition, and make no mention of their lien, and by impli-
cation their promise to deliver the next week is a promise then
to waive their lien.   We have seen that this promise to deliver
the bills of lading did not amount to a valid contract, because
of the lack of a consideration, and for the same reason it did
not amount to a valid contract to waive their lien.   This lack
of consideration results from their lack of information that
the plaintiffs intended to make any advances to Green before
receiving the bills of lading.   In the absence of information
to the contrary, the defendants cannot be held or found to
have assumed that the plaintiffs would make any advances
before receiving the bills of lading.   The defendants in effect
said to the plaintiffs in their letter, " You will be obliged to
wait until next week."   The plaintiffs, without further con-
sulting the defendants, did not wait, but acted immediately,
and thus assumed the risk of the defendants performing their
promise.   The defendants' promise to deliver the bills of
lading the next week would, no doubt, have implied a state-
ment *in presenti* that the defendants had no lien upon the

cotton, which would have bound them, if they had made it upon an intimation from the plaintiffs that the latter contemplated making an immediate advance to Green upon their promise instead of upon the bills of lading, when received. The duty to assert their lien was not presented to them, except in connection with their delivery of the bills of lading, and they postponed both together.

Before the time arrived for the defendants to perform as they had promised, Green became insolvent, and thus the situation was changed. We assume that the defendants had intended to waive their lien upon the credit of a solvent debtor. When Green's insolvency was disclosed, it was the defendants' right to retract their promise as to him and refuse to deliver the cotton or the bills of lading. So far as they were advised, he had not asked their promise or received anything upon account of it. Their lien, we have assumed from their answer and the course of the trial, was a factor's lien for advances, that is, a possessory lien, which would be lost upon parting with the possession of the cotton without protecting it in some way. The reasons which permit the unpaid vendor of goods to stop them *in transitu* upon the happening of the insolvency of the vendee apply with equal force to the factor who has a lien for advances upon his principal's goods. (*Muller* v. *Pondir*, 55 N. Y. 325.) If delivery may be recalled upon insolvency, much more may it be refused.

As the declaration and promise of the defendants did not of themselves amount to an estoppel, it remains to be considered whether the silence of the defendants as to their lien is itself an estoppel, precluding the assertion of the lien, or adds such force to their declarations and promise as together to create it.

The language of FINCH, J., in *Collier* v. *Miller* (137 N. Y. 332, 339) is applicable here : " Undoubtedly mere silence may sometimes found an estoppel, but it must be when there is a duty and opportunity to speak, when silence either is or operates as a fraud to the consciousness of the party who does not speak and when he knows or ought to know that some-

one is relying upon his silence and will be injured by that silence ( *Viele* v. *Judson*, 82 N. Y. 40)."

Silence may differ in legal effect from declarations ; if the latter are in their nature misleading, the declarant's liability for them is not nullified by an absence of intention to that end. (*Blair* v. *Wait*, 69 N. Y. 113.) It is obvious that declarations mean what they express or imply, or both, and that silence can only be made culpable by proof of the duty of speech. (*Thompson* v. *Simpson*, 128 N. Y. 270.) We conclude that the defendants' silence of itself does not amount to an estoppel.

Considering their silence in connection with their declarations and promise, we repeat that the plaintiffs gave the defendants no intimation that they proposed making advances to Green except upon the bills of lading, and, therefore, not until they received them, and thus the plaintiffs did not place the defendants in a position to make it their duty to declare themselves more fully than they did. Thus the facts asserted, implied and omitted, considered together, do not create an equitable estoppel against the defendants.

The plaintiffs cite *Knights* v. *Wiffen* (L. R. [5 Q. B.] 660) and *Woodley* v. *Coventry* (2 Hurls. & C. [Exch.] 164) as decisive in their favor. They are to the effect that where an unpaid vendor of goods to a vendee who becomes insolvent before the vendor has made actual delivery, represents before the insolvency is known to the vendee's assignee of the goods, who has paid the vendee for them, that his sale to his immediate vendee is a completed one in all respects, and that he holds the goods subject only to the order of his vendee, and recognizes or will obey his order for their delivery, he is estopped upon the insolvency of his vendee from asserting his vendor's lien against the vendee's assignee, who presents the vendee's order for the delivery of the goods. Of course, in such a case, the vendor in effect represents to the assignee that it is perfectly safe for him to act immediately upon the facts as he states them, not, as in the case before us, as he promises that they shall exist the next week. The facts in the cases

cited are stated and discussed in the opinion by the learned General Term upon the first appeal in this case (91 Hun, 375). The case of *Knights* v. *Wiffen* is fully considered in *Anderson* v. *Read* (106 N. Y. 333), with other cases, and the distinction is clearly drawn between representations as to the existing situation and a promised future situation, as affecting an unpaid vendor's lien whose immediate vendee becomes insolvent, and the delivery of the goods is, therefore, withheld from the vendee's vendee or assignee. That case differs in its facts from the one before us, but declares the principles which govern it. We need not repeat its analysis of the cases which illustrate the doctrine of estoppel *in pais* as applicable to possessory liens.

The plaintiffs also cite *Miss. Coal, etc., Co.* v. *Ottumwa Belle* (78 Fed. R. 643); *Garrettson* v. *N. A. Bank* (39 Fed. R. 163); *Oddie* v. *National City Bank* (45 N. Y. 735); *Henry* v. *Brown* (19 Johns. 49); *Power* v. *Pinkerton* (1 E. D. Smith, 30). They do not conflict with this rule. In the first case the plaintiffs sought to establish their lien upon a vessel, against the owners who had purchased it after asking the plaintiffs if they had any lien, and receiving their answer that they had none. In the second case a bank, upon being asked by telegraph if James Tate's check upon it was good for $22,000, answered that it was. The third case was much like the second. *Henry* v. *Brown* and *Power* v. *Pinkerton* were upon negotiable paper, the genuineness of which the maker had admitted. These were cases of admissions or representations of existing facts, made with notice that the parties to whom they were made would rely and act upon them, and not of facts to be admitted by and upon performance of a promise for future performance.

The doctrine of estoppel *in pais* is one of good faith and fair dealing. When applied to declarations it requires the same good faith to the speaker as to his hearer. His admissions are to be construed from the standpoint of his knowledge of the facts, and not from that of his hearer's undisclosed intentions. It includes this proposition: Your statement of

the fact, made by you as the basis of another's action, you cannot afterwards impeach by the fact itself to the injury of the other, if meantime he has in good faith, within the fair meaning of your admission, acted upon it. But a gratuitous promise to perform at a future day, and thereby to waive all liens made under the supposition that existing conditions and relations will continue suspended and unchanged, is not a statement of present performance, or the equivalent of it, or of present waiver, and the promisee takes the risk if he acts prematurely upon it.

Tested by this rule the judgment is right.

The judgment should be affirmed, with costs.

O'Brien, Cullen and Werner, JJ., concur; Gray and Haight, JJ., dissent; Parker, Ch. J., not sitting.

Judgment affirmed.