UTICA TRUST AND DEPOSIT COMPANY, Respondent, · *v.* FELIX B. DECKER, Appellant, Impleaded with ORVILLE D. FOOTE, Defendant.

Fourth Department, May 12, 1926.

Mortgages — chattel mortgage — plaintiff held chattel mortgage on stock of automobiles purchased by dealer — mortgage was filed in compliance with Lien Law, § 230 — mortgagor covenanted not to sell any automobiles without paying plaintiff release value — defendants bought and paid for two automobiles without knowledge of lien — lien not valid as to defendants — in order to make lien effective as to innocent purchasers for value it was necessary for plaintiff to comply with Personal Property Law, § 45 — Lien Law, § 230, and Personal Property Law, § 45, respectively amended and added by Laws of 1911, chap. 326, must be read together as part of legislative plan —" merchandise " as used in Personal Property Law, § 45, includes stock of automobiles.

The plaintiff, who held a chattel mortgage on a stock of automobiles owned by a dealer, which mortgage was filed in compliance with section 230 of the Lien Law, does not have a valid lien as against the defendants who purchased and paid for two of the automobiles without knowledge of the existence of plaintiff's alleged lien, notwithstanding the chattel mortgage in question prohibited the mortgagor from selling any automobile without first paying to the plaintiff the release value thereof.

The plaintiff, in order to have a valid and effective lien on automobiles held in stock by a dealer as against innocent purchasers for value, was required to comply with section 45 of the Personal Property Law, which covers the situation here involved and which requires, among other things, the posting of a notice in the place of business of the mortgagor, stating the name and designation of the lienor, and that a notice of the lien is filed with the officer designated in section 232 of the Lien Law, and advising prospective purchasers or incumbrancers of any liens against the chattels by others than the possessors and the nature thereof.

Section 230 of the Lien Law, relating to chattel mortgages, and section 45 of the Personal Property Law, relating to liens held on a stock in trade, which were respectively amended and added by chapter 326 of the Laws of 1911, must be read and construed together as part of a legislative plan, and when so read and construed the two sections are not inconsistent with each other, but were enacted for the purpose of covering different situations, and the compliance with section 230 of the Lien Law, in the case of a lien on a stock in trade, does not give the lienor a valid lien as to subsequent innocent purchasers for value.

The word " merchandise," as used in section 45 of the Personal Property Law, includes a stock of automobiles in the possession of an automobile dealer.

DAVIS, J., dissents, with opinion.

APPEAL by the defendant, Felix B. Decker, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the

clerk of the county of Oneida on the 27th day of July, 1925, upon the decision of the court rendered after a trial at the Oneida Special Term.

The judgment entered herein required the defendant to deliver a certain automobile to the sheriff of Oneida county.

*Francis T. Ropiecki* [*Herbert C. Sholes* of counsel], for the appellant.

*Miller & Hubbell* [*Dwight C. Pitcher* of counsel], for the respondent.

TAYLOR, J. The Genesee Motor Car Company, a name under which Edson L. O'Donoghue and Edward F. Wetzel were operating as copartners, was engaged in the business of purchasing automobiles and selling them at retail in the city of Utica, N. Y. The cars were housed and displayed in a building of a character and in a locality suitable therefor in that city. The company's system of financing and of doing business was this: When shipments of automobiles arrived in Utica consigned to the Genesee Company it borrowed money from this plaintiff to pay for them. As consideration therefor said copartners concurrently executed and delivered to plaintiff their promissory notes and chattel mortgages covering the automobiles. Two automobiles thus held in stock by the Genesee Motor Company were bought and paid for in full by these defendants and delivered to them, respectively, on or about July 5, and May 22, 1924, no payment being made thereon by the Genesee Company to this plaintiff, and no release being obtained from plaintiff. A chattel mortgage covering these two automobiles was duly filed on April 10, 1924, pursuant (as plaintiff claims) to section 230 of the Lien Law. However, the provisions of section 45 of the Personal Property Law were not recognized nor observed. Concededly, these automobiles and over 200 others had been left by plaintiff in the possession of said Genesee Company for sale by it in the open market at retail. Concededly also the purchasers of these two automobiles had no knowledge or actual notice of any lien or claim of this plaintiff. In these chattel mortgages the mortgagors covenanted not to sell or dispose of any of the automobiles without first paying to plaintiff the "release value" thereof specified in the mortgage; and the plaintiff covenanted to release cars upon such payment.

It is apparent at the outset that we are considering a business scheme wherein chattels or merchandise were kept on hand for sale to purchasers in the open market and not otherwise. It was not a matter, for example, of household furniture or farming tools

or the like in private household or business use, partially paid for and under chattel mortgage security. A purchaser of one of these cars was in the same situation as is the average person who purchases a handsaw in a hardware store.

While it has long been the rule that permission given to a chattel mortgagor by his mortgagee to keep in possession and sell the mortgaged chattels does not render the mortgage fraudulent or void as to creditors, provided the proceeds are applied in payment of the chattel mortgage as agreed, this rule is operative only because in such circumstances the mortgagor is deemed the mortgagee's agent and the proceeds of sales are treated as reducing the amount due on the mortgage, even though the mortgagor should misapply them or refuse to pay them to the mortgagee. (*Conkling* v. *Shelley*, 28 N. Y. 360; *Skilton* v. *Codington*, 185 id. 80.)

If this rule be applicable to innocent purchasers also, the chattel mortgage in question would not be void *per se*, whether filed or not; but the mortgagee, this plaintiff, unless protected by the filing, would be compelled to look to its agents, the mortgagors, for money due and could not recover from these defendants.

However, we are assisted in the determination of this case by statutory provisions. By section 230 of the Lien Law, conveyances intended to operate as mortgages of goods and chattels are void as against creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith, unless filed in accordance with other sections of said act. In this section it is further stated that it *shall not apply* to agreements creating liens on merchandise where the conditions specified in section 45 of the Personal Property Law are complied with. This reference to said section 45 indicates that the lien agreements covered thereby are of the same general character as those mentioned in said section 230.

Said section 45 states that liens upon merchandise, or the proceeds thereof, created by agreement for the purpose of securing the repayment of loans or advances made or to be made upon the security of said merchandise (liens similar to the one here in question) shall not be void or presumed to be fraudulent and void as against creditors *or otherwise* by reason of want of possession of the merchandise on the part of the lienor, provided that in each instance a certain sign is posted on the premises where the goods are kept containing the name and designation of any lienor, factor or consignee, and that a notice of the lien is filed with the officer designated in section 232 of the Lien Law, advising prospective purchasers or incumbrancers of any liens or claims against the chattels by others than the possessors, with the nature thereof and identifying the owners of such liens. The provisions for filing and indexing

differ from and are more elaborate than those specified in sections 230–233 of the Lien Law.

It may be argued that as to an agreement creating a lien upon merchandise and within the purview of section 45 of the Personal Property Law, said section 230 of the Lien Law applies and prevents a filed chattel mortgage from being void as to subsequent purchasers in all cases wherein the conditions specified in section 45 of the Personal Property Law are not complied with. If so, the whole act (Laws of 1911, chap. 326) fails to create a smoothly operating, comprehensive scheme. For such construction would permit lienors in cases clearly within the scope of said section 45 to protect themselves fully by simply filing their lien documents pursuant to said section 230. And this cannot be intended.

We are of the opinion that said section 45 furnished to this plaintiff, and to all persons having claims or liens upon similar chattels similarly held and dealt in, a means of protection as against the whole world. And the statement in the section that conformity with its provisions will prevent any presumption of fraud or invalidity from attaching to lien documents specified — coupled with the statement in section 230 of the Lien Law that other documents intended to operate as chattel mortgages shall be void as to certain interested parties unless filed (the situation covered by section 45 being specifically excepted) — seems to indicate that mere filing in the instant case was not a prescribed means of escaping from the presumption that this chattel mortgage was fraudulent and void as to these innocent purchasers.

Sections 230–233 of the Lien Law and section 45 of the Personal Property Law became operative together by one enactment in chapter 326 of the Laws of 1911 (subsequent amendments thereof being immaterial here). A discussion of the state of the chattel mortgage law, common and statutory, controlling in times preceding this, is unnecessary. A consideration of this whole act of 1911 makes it apparent that these two sections mentioned were each a part of one legislative plan: (1) To enable dealers in merchandise kept in stock, who could not pay cash in full, to finance the purchase of such merchandise and to keep possession of it for sale at retail; (2) to furnish a means of protection to persons having liens on such merchandise for money advanced to pay for it; (3) to protect (a) creditors of such dealers and (b) incumbrancers and purchasers innocent of any defect in the dealer's title, by *requiring* a notice to be posted conspicuously on the premises where the goods were located, thereby obviating the necessity of also searching the public records for further notice; and (4) as to chattels otherwise possessed and situated, not only to compel lienors to file

their documents of security, if they so desire, for protection, but to require creditors, incumbrancers and purchasers to search the public records for their own safety.

The true scope of the word " merchandise," as used in said section 45, is a matter of importance. It has been stated that the word covers only those articles kept in stock and sold by people whom we have known for years as " merchants; " *e. g.,* articles such as drygoods, hardware and the like. But the word has a broader meaning in these days. For example, it embraces carriages, wagons and other vehicles (*Wynne* v. *City of Eastman*, 105 Ga. 614); the phrase " goods, wares, commodities kept for sale  *  *  *  where located " is construed to include lumber (*Mitchell* v. *Town of Plover*, 53 Wis. 548); likewise it has been construed to include ties, poles and posts kept for sale (*Torrey* v. *Shawano County*, 79 Wis. 152). The Standard Dictionary defines " merchandise " as " anything movable customarily bought and sold for profit; " " ' merchandise '  *  *  * covers all kinds of personal property which is ordinarily bought and sold in the market." (*Blackwood* v. *Cutting Packing Co.*, 76 Cal. 212.)

As business is now carried on, every reasonable purpose is served and the rights of all who are affected by documents operative as chattel mortgages are fairly assured by reading these sections together and construing them as indicated.

Our view is sustained by the opinion in *Boice* v. *Finance & G. Corp.* (127 Va. 563), a case singularly like the instant case in its facts. (See, also, 18 Mich. Law Rev. 788.)

If we are correct in our conclusion as to the proper construction of the said statutes, then neither the mere filing of the chattel mortgage involved nor the fact that it expressly prohibited a sale of these automobiles unless their " release value " was first paid to the chattel mortgagee can aid respondent.

Sections 106, 107 and 155 of the Personal Property Law (as added by Laws of 1911, chap. 571, known as the Sales of Goods Act) obviously have no application. Nor has section 230-a of the Lien Law (added by Laws of 1921, chap. 462, as amd. by Laws of 1922, chap. 137), which is merely an extension to mortgagees, for the benefit of creditors of mortgagors only, of the Bulk Sales Act (Pers. Prop. Law, § 44, as amd. by Laws of 1914, chap. 507) which applies to vendors.

Plaintiff obtained judgment directing the sale of the two automobiles and the payment of plaintiff's claim against them under its chattel mortgage. The defendant Decker alone appealed.

The judgment against said defendant should be reversed on the law; the conclusions of law found should be disapproved and

reversed and certain new findings of fact and law made; and inasmuch as all the material facts are stipulated and plaintiff cannot recover on a new trial, the complaint should be dismissed, with costs.

HUBBS, P. J., CLARK and CROUCH, JJ., concur; DAVIS, J., in an opinion dissents as to the reversal and as to the making new findings and votes for affirmance.

DAVIS, J. (dissenting). The trial court made findings of fact on evidence consisting of stipulated facts and exhibits. On these findings no conclusion can be reached other than that the judgment should be affirmed. The record indicates that the defendant Decker proposed no findings of fact and took no exceptions to those found. The findings made were satisfactory to him. He is aggrieved only by the first conclusion of law found by the trial court; and he has not asked that new findings be made here. Nevertheless, for the purpose of reversal new findings are being made. The authority given an appellate court to make such findings is statutory (Civ. Prac. Act, § 584; Rules of Civil Practice, rule 239; *Ely* v. *Barrett*, 224 N. Y. 550) and is an innovation in practice. This right is usually exercised when by reason of insufficient findings in the court below due to inadvertence, inconsistency or some other reason, it is necessary to make new or additional findings to support the judgment. (*Fraser* v. *Kent*, 194 App. Div. 742, 749, 752; *Reich* v. *Cochran*, 196 id. 248, 254; appeal dismissed, 236 N. Y. 576; *Leeds* v. *Joyce*, 202 App. Div. 696, 700; affd., 235 N. Y. 620; *Sweeney* v. *Modern Woodmen of America*, 206 App. Div. 730; revd. on other grounds, 237 N. Y. 536; *Ely* v. *Barrett, supra.*) New findings may also be made when the evidence is in dispute, and on appeal the court deems the findings against the weight of evidence, and reverses the findings of fact made on the trial. (*Caldwell* v. *Nicolson*, 235 N. Y. 209; *McDougall* v. *Shoemaker*, 236 id. 127.)

The making of new findings on appeal, unasked, for the purpose of reversal, some based on evidence which the unsuccessful party on the trial apparently deemed immaterial, and some being mere legal conclusions, is at least very unusual, and of doubtful propriety. (See *Rives* v. *Bartlett*, 215 N. Y. 33, 38.)

The free traffic in goods and chattels depends largely upon the giving of credit. The financing of all sales on a cash basis under present economic conditions is impossible. Ordinarily, to obtain credit there must be security in some form. Legislative enactments in aid of such a policy are general, having for their purpose the security of the seller or lender and the protection of the buyer,

borrower and subsequent innocent purchasers. The form of security may be: (1) The indorsement or guaranty from a third person; (2) a lien upon property other than that sold; and (3) a lien upon the property sold.

The latter form is common. There may be a conditional sale of property with title retained in the seller. (Pers. Prop. Law, § 64, as since amd. by Laws of 1925, chap. 561; Uniform Conditional Sales Act.) There may be a sale or loan secured by a mortgage on the property sold (Lien Law, art. 10) or there may be a sale or release of possessory lien with notice of lien filed and other notices posted in the building where the goods are located. (Pers. Prop. Law, § 45.) All methods are attended by some inconvenience and occasionally by hardship and loss.

Here the parties to the original contract selected the chattel mortgage form of security. The mortgage in question covered four automobiles sufficiently described by name and number so that they might be readily identified. They were, so it is now found, part of a stock of merchandise, yet by the terms of the mortgage their sale, rental or loan was forbidden except by the written release from the mortgagee, and their use was limited to exhibition purposes. The mortgage was given for the purchase price of the automobiles and was duly filed. The release for sale was to be given only upon payment to the mortgagee of the definite sum stated as release value.

If we assume that these four automobiles, so limited in their use, constituted merchandise in the commercial sense of the term or were part of a stock of goods (to which propositions I do not assent), the mortgage was not thereby rendered invalid. A mortgage on a shifting stock of goods, where there is an agreement either contained in the mortgage or outside of it that the mortgagor may freely sell and dispose of the goods for his own benefit, is void as a matter of law against creditors, subsequent incumbrancers or purchasers in good faith without notice. (*Edgell* v. *Hart*, 9 N. Y. 213; *Ford* v. *Williams*, 13 id. 577; *Southard* v. *Benner*, 72 id. 424; *Skilton* v. *Codington*, 185 id. 80.) But the mere fact that certain goods are sold by the mortgagor in the absence of proof of an agreement therefor, even with knowledge of the mortgagee, does not make the mortgage void as a matter of law, although it may as a question of fact. (*Frost* v. *Warren*, 42 N. Y. 204.) Nor is such a mortgage void as a matter of law if certain limited sales are permitted (*Brackett* v. *Harvey*, 91 N. Y. 214; *Spaulding* v. *Keyes*, 125 id. 113); or because permission is given for the use and partial consumption of the property. (*Spurr* v. *Hall*, 46 App. Div. 454; affd., *sub nom. Spurr* v. *Pisher*, 168 N. Y. 593.) In the

case under consideration sale was forbidden and the mortgagee could not well contemplate that the mortgagors would violate their agreement and commit a crime. (See Penal Law, § 940.) An unauthorized sale by the mortgagors would not vitiate the mortgage. (Griffin & Curtis Chat. Mort. [4th ed.] 115.)

The rule varies in different jurisdictions depending no doubt upon the terms of particular statutes and general grounds of policy adopted by the courts. (Jones Chat. Mort. [5th ed.] § 379 *et seq.*) The United States Supreme Court accepts the settled law of each State as decisive in respect to any case arising therein but it approves as sound the doctrine that a chattel mortgage is not necessarily invalid because the property covered thereby is a stock of goods with permission to the mortgagor to sell under some limitations. (*Etheridge* v. *Sperry*, 139 U. S. 266; Jones, *supra*, § 410-a.) As instances of the varying rule, in Virginia a chattel mortgage given on goods actively used in trade is " null and void as against creditors and purchasers." (*Boice* v. *Finance & G. Corp.*, 127 Va. 563, 569.) Substantially the same doctrine prevails in Colorado, Missouri, New Hampshire, Tennessee and a few other States. In Massachusetts, Illinois, Iowa and many other States a doctrine similar to that in this State prevails or is even more liberal toward the validity of such mortgages. (See Jones Chat. Mort. [5th ed.] § 382 *et seq.*)

The filing of the mortgage was constructive notice to appellant not only that there was a mortgage lien on the property but " it was notice of all its terms." (*Zartman* v. *First Nat. Bank*, 189 N. Y. 267, 271.) The interests of the mortgagee and that of possible purchasers were safeguarded by giving notice of the only terms on which the property could be bought.

But as I read the prevailing opinion, the mortgage is held invalid against a subsequent purchaser in good faith because it is not authorized by statute. In other words, since the enactment of section 45 of the Personal Property Law, a person who sells or extends credit on any goods or chattels to a person engaged in trade, may have no choice in his method of security — if the property falls under some general definition of " merchandise." He may neither make a conditional sale nor take a chattel mortgage, but must adopt and follow exclusively the provisions of section 45.

With this doctrine I do not agree; and do not so interpret the intent of the Legislature. I look upon that section as furnishing an additional method of security through liens on merchandise in the ordinary commercial meaning of the term. By statute, factors, agents and others in possession of merchandise or of documentary evidence of title, have a lien thereon for any money advanced or

negotiable security given, and the right to sell the property. (Pers. Prop. Law, § 43, as amd. by Laws of 1915, chap. 273; Lien Law, § 182.) This lien depends upon possession of the goods or documents (*Howland* v. *Woodruff*, 60 N. Y. 73) and is lost upon parting with possession without protecting it in some way. (*Hollins* v. *Hubbard*, 165 N. Y. 534, 542.)

The main purpose of section 45, as I read it, is to extend the lien to include commissions of factors and others and to preserve the lien although possession is lost. (*Heyman* v. *Kevorkian*, 193 App. Div. 859.) Possibly others may avail themselves of the provisions of this statute in taking security. It would not seem to be a practical way of securing long term credit. Buyers would not naturally be attracted to a store where notices of liens were posted. If the section provides a form of security for a general loan, it probably is intended to furnish a legal method of selling goods from the stock for cash or on credit for the benefit of the lender and in reduction of the lien without affecting the validity thereof. Heretofore there has been much confusion in the authorities regarding the effect of sales by the mortgagor in possession on the validity of the mortgage. This statute may represent a legislative intent to settle the matter.

Even if we assume that the term " merchandise " as used in said section, applies to separable, distinct articles of large value, like automobiles, and that sellers or lenders may in giving credit avail themselves of the provisions of this section, I do not believe they are limited exclusively to that method of taking security. The statute says: " This article [providing for filing] *shall not apply* to agreements creating liens upon merchandise \* \* \* for the purpose of securing the repayment of loans or advances made or to be made upon the security of said merchandise and the payment of commissions or other charges provided for by such agreement, where the conditions specified in section forty-five of the Personal Property Law are complied with." (Lien Law, § 230.)

That language lacks much of saying any other agreement for a lien is void. It permits election and is not exclusive. A chattel mortgage on certain personal property owned by a merchant may or may not be void, according to the limitations on the right to sell; but it is not necessarily void because the lienor did not avail himself of the provisions of section 45. The provisions of the Lien Law (§ 230) are not applicable to other methods of giving security, as the statute was amended in 1911 and is since amended by chapter 419 of the Laws of 1921. Further requirements are imposed upon persons mortgaging stocks of goods by section 230-a

10

of the Lien Law, added by chapter 462 of the Laws of 1921, as amended by chapter 137 of the Laws of 1922. These subsequent enactments indicate that in the legislative mind the chattel mortgage has at all times been regarded as a useful and available instrument of credit and security, and there was no intent to forbid its use, though other methods were permitted.

If defendant failed to take advantage of the filing statute by making examination of the records and satisfying himself concerning the seller's title before making the purchase, the consequences are his own fault.

I dissent both from the decision to reverse and the proposed new findings.

Judgment reversed on the law, with costs, additional findings made, and complaint dismissed, with costs.